```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
FEEL FILMS LIMITED,

                Plaintiff,

-against-

AP PRODUCTION SERVICES, INC.,

                Defendant.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/8/2022
```

21 Civ. 451 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Feel Films Limited ("Feel Films"), brings this action against Defendant, AP Production Services, Inc. ("APP"), asserting claims for breach of contract, conversion, and related declaratory relief arising out of APP's alleged breach of a contract to provide production services in connection with a commercial, and its alleged conversion of certain tax credits belonging to Feel Films. *See generally* Amend. Compl., ECF No. 30. Feel Films moves for partial summary judgment under Federal Rule of Civil Procedure 56 on its claims for breach of contract and conversion that relate to APP's alleged mishandling of the tax credits. *See* Pl. Mot., ECF No. 44; Pl. Mem., ECF No. 48. For the reasons stated below, Feel Films' motion for summary judgment is DENIED.

## BACKGROUND[1]

    In the summer of 2020, Feel Films, an independent film studio based in London, contracted with an advertising agency to produce a commercial for Kia Motors of America. Def. 56.1 ¶¶ 1, 3, ECF No. 51. On July 14, 2020, Feel Films entered into an agreement with APP pursuant to which APP agreed to provide line production services for the commercial in Georgia (the "Agreement"). *Id.*

---

[1] The facts in this section are taken from the parties' 56.1 statements, unless otherwise noted. Citations to a paragraph in the Rule 56.1 statement also include the other party's response. The Court considers admitted for purposes of the motion any paragraph that is not specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. Local Civ. R. 56.1(c). Where there are no citations, or where the cited materials do not support the factual assertions in the statements, the Court is free to disregard the assertion. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

¶ 4.  Feel Films agreed to pay APP a producer fee for its services.  *Id.* ¶ 25.[2]

To incentivize entities to produce films in the state, Georgia offers tax credits to producers. *Id.* ¶ 5.  Under the Agreement, APP took on certain obligations and duties with respect to these tax credits.  *Id.* ¶ 7.  Specifically, as is relevant here, the Agreement stated that:

> a. [APP] shall, in as expeditious a manner as possible, do and perform all acts necessary to maximize the amount of Tax Credits and secure [their] receipt . . . including, without limitation, making all filings as may be necessary with applicable state and city authorities.  [APP] will . . . in as expeditious a manner as possible, execute and deliver (or take or cause to be taken all such other or further action as [Feel Films] may reasonably request) to [Feel Films] such additional documents, certifications or instruments as may be reasonably requested by [Feel Films] and necessary to ensure the availability of the Tax Credits, the issuance of the Tax [C]redit Certificate(s) and the payment of [the amounts reflected on the Tax Credit Certificates,] . . . to [Feel Films] or at [Feel Films'] direction.  Further, [APP] shall from time to time, as reasonably requested by [Feel Films], report on the status of the Tax Credits, and . . . promptly (and in any case within five (5) business days of receipt) provide [Feel Films] with copies of all communications, whether sent or received, by [APP] with the applicable authorities in respect of the Tax Credits . . . .
>
> b. [APP] agrees that the amounts reflected on the Tax Credit Certificates . . . shall within seven (7) days of receipt of such Tax Credits or Tax Credit Certificates, be paid, via wire as directed by [Feel Films] or provided to [Feel Films], as applicable.  There shall be no offset or other reduction taken by [APP] against the [amounts reflected on the Tax Credit Certificates].

Agreement art. 6(a), (b), ECF No. 46-1.  The Agreement also stated that "[APP] agrees that the Tax Credits and Tax Credit Certificates are held in trust for [Feel Films] such that the Tax Credits and Tax Credit Certificates are the property of [Feel Films]," and that in the event of APP's insolvency the Tax Credits "shall not be considered property of [APP]."  *Id.* art. 6(c).

Under the Agreement, the budget for producing the commercial was $1,462,766.  Def. 56.1 ¶ 14.  Feel Films was obligated to pay for expenditures in excess of that amount only if it had provided "previous written consent" for the expense incurred.  Agreement art. 4.  But, Feel Films was

---

[2] The parties dispute whether the producer fee was $60,000 or $52,801.  *See* Pl. Reply 56.1 ¶ 25., ECF No. 57.

prohibited from "unreasonably with[holding] or delay[ing]" such consent. *Id.*

As was contemplated in the Agreement, the parties produced the commercial in Georgia and Feel Films paid APP $2,332,050.20, which included approved expenditures in excess of the original budget. Def. 56.1 ¶ 16. APP incurred additional costs when making the commercial, and the parties dispute whether Feel Films "unreasonably refused to pay" these costs. *Id.* ¶¶ 30–33. On one specific occasion, APP asked Feel Films to approve an expenditure of over $40,000 for COVID-19 testing, and Feel Films refused to do so. *See* Def. 56.1 ¶¶ 34–35; Goldberg Supp. Decl. ¶¶ 7–8, ECF No. 62; ECF No. 50-2.

APP engaged a tax credit consultant and made submissions to the Georgia Department of Revenue concerning the tax credits, but it did not promptly provide Feel Films with copies of these communications. Def. 56.1 ¶ 17. Consistent with industry custom, the tax credits were calculated based on the expenditures paid in connection with the production of the commercial. *Id.* ¶ 36. APP obtained tax credits in the amount of $427,731. *Id.* ¶ 20. Although Feel Films demanded that APP deliver the tax credits and information about those credits on numerous occasions, APP refused to do so. *Id.* ¶ 18. Rather, APP informed Feel Films that it was entitled to retain the tax credits for itself, as a form of "self-help" or an offset against certain commercial expenses for which Feel Films did not pay. *Id.* ¶ 19. After refusing to provide the tax credits to Feel Films, APP disposed of them on April 28, 2021, by selling them to third parties for $378,541.94. *See id.* ¶ 21. Although Feel Films has repeatedly demanded that APP transfer the proceeds from the sale of the tax credits to Feel Films, APP has refused to do so. *Id.* ¶ 22.

## DISCUSSION

I. <u>Legal Standard</u>

Summary judgment is appropriate when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–26 (1986). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing particular evidence in the record. Fed. R. Civ. P. 56(c)(1); *see also Celotex*, 477 U.S. at 323–24; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir. 2002). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 529 (2006); *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002). In doing so, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), as "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000). In deciding the motion, the court views the record in the light most favorable to the nonmoving party. *Koch*, 287 F.3d at 165.

II. Application

A. Breach of Contract

Under New York law, a plaintiff must satisfy four elements to succeed on a breach of contract claim: (1) "the making of a contract," (2) "performance of the contract by the plaintiff," (3) "breach of the contract by the defendant," and (4) "damages suffered by the plaintiff." *Fabry's S.R.L. v. IFT Int'l, Inc.*, No. 02 Civ. 9855, 2003 WL 21203405, at *3 (S.D.N.Y. May 21, 2003).

Feel Films argues that it performed its obligations under the contract by paying APP $2,332,050.20, which included overages it approved from the original budget of $1,462,766, and that APP breached its obligations under the contract by failing to turn over the tax credits to Feel Films. *See* Pl. Mem. at 7–9; Def. 56.1 ¶ 16. Feel Films also contends that, even if it owes APP money for additional expenses APP incurred that were not approved by Feel Films, Feel Films is still entitled to

4

summary judgment on its claim for the tax credits because the Agreement "expressly states that APP's obligations to secure and deliver the [t]ax [c]redits were independent and discrete from the parties' other obligations." Pl. Mem. at 7–9; *see also* Agreement art. 6(b), (c). APP argues that the Agreement is unenforceable because APP used all of the money Feel Films provided to pay for production-related expenses, and, therefore, did not receive any consideration for its efforts. Def. Mem. at 17–19, ECF No. 49. APP also contends that Feel Films has not materially performed under the contract because it did not pay APP sufficient funds to cover the producer fee and the costs of the commercial, and because it unreasonably withheld consent for certain expenditures. *Id.* at 19–20.

First, the Court finds that the Agreement does not fail for a lack of consideration. The cases identified by APP in support of its argument concern situations in which one party does not receive any funds from the other party. *See, e.g., Porat v. Rybina*, 177 A.D.3d 632, 633 (2d Dept. 2019) ("[T]he defendants raised a triable issue of fact with respect to the defense of lack of consideration, by submitting their sworn affidavits which averred that the plaintiff failed to transfer any funds or give any financial benefits to the defendants"). Here, it is undisputed that Feel Films paid APP $2,332,050.20, which included the original budget plus certain additional expenditures and is considerably more than the producer fee to which APP was entitled under the terms of the contract. *See* Def. 56.1 ¶ 16; Pl. Reply 56.1 ¶ 25, ECF No. 57. APP claims that it did not retain any of the money paid by Feel Films because "every dollar and cent . . . was used to pay necessary production expenses." Def. Mem. at 19 n.10. But, this argument does not go to whether there was consideration for the Agreement; rather, it goes to whether Feel Films materially breached the Agreement. Thus, the Agreement is not void based on a lack of consideration.

Second, the Court agrees that, in order for Feel Films to recover for APP's breach of the tax credits provisions, Feel Films must show that it materially performed its obligations under the Agreement. *See Bear, Stearns Funding, Inc. v. Interface Grp.-Nev., Inc.*, 361 F. Supp. 2d 283, 291

(S.D.N.Y. 2005) ("A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party."). The Agreement states that APP shall take "no offset or other reduction" against the amounts reflected on the tax credits and shall hold the "Tax Credits and Tax Credit Certificates . . . in trust for [Feel Films] such that [it is] the property of [Feel Films]." Agreement art. 6(b), (c). Although these provisions provide clear directives regarding APP's responsibilities with respect to the tax credits, and may impose restrictions on its ability to engage in self-help or make certain arguments with respect to damages, they are silent as to Feel Films' burden of proof regarding any potential breach of contract claims and APP's ability to defend itself against such a claim. *Cf. Mitsubishi Elec. Corp. v. Westcode, Inc.*, No. 315 Civ. 505, 2016 WL 3855180, at *6 (N.D.N.Y. July 12, 2016).

Moreover, the Court finds that the tax credit provisions are not "independent and divisible" from the other parts of the contract. *Cf. Coleman Co. v. Hlebanja*, No. 96 Civ. 1288, 1997 WL 13189, at *7 (S.D.N.Y. Jan. 15, 1997). Indeed, APP's obligations with respect to the tax credits are clearly linked to Feel Films' obligations with respect to paying the costs of production because the amount of the tax credits is directly correlated to the costs incurred in producing the commercial. *See* Agreement art. 6; *see also* Def. 56.1 ¶ 36. Additionally, the Agreement provides that APP shall hire a tax credit consultant and pay his or her fees using funds from the budget supplied by Feel Films. Agreement art. 6(e). Thus, the language of the Agreement and the interrelatedness of its provisions suggest that the parties did not intend for the tax credits provision to be "independent and discrete from the parties' other obligations." Pl. Mem. at 7–9; *see also Coleman*, 1997 WL 13189, at *7; *Refinemet Int'l Co. v. Eastbourne N.V.*, 815 F. Supp. 738, 742 (S.D.N.Y. 1993), *aff'd*, 25 F.3d 105 (2d Cir. 1994).

The cases cited by Feel Films in support of its argument regarding the effect of the "no-offset" provision are not persuasive. The cases most relevant to the Court's interpretation of the Agreement

6

either concern contracts that more specifically discuss a party's ability to defend against or assert a breach of contract claim,[3] or contracts where the provision being enforced is considered an independent covenant.[4] Neither applies to the contract at issue here.

Because Feel Films must show it materially performed under the Agreement, the Court shall now address whether it has made such a showing. Under New York law, a breach is considered material if it "go[es] to the root of the agreement between the parties." *See Bear, Stearns*, 361 F. Supp. 2d at 295 (citation omitted). Thus, a "party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Id.* (citation omitted).

In support of its argument that it performed under the Agreement, Feel Films contends that it paid APP "for all but certain unapproved expenses." Pl. Mem. at 7. APP contends that Feel Films failed to meet its obligations because it refused to pay for expenses to which it had knowingly assented and unreasonably withheld consent for other necessary expenses—resulting in APP paying $211,640.24 out-of-pocket and being unable to retain any part of its producer fee. Def. Mem. at 19–20; Goldberg Decl. ¶¶ 6–9. Moreover, APP submits that Feel Films refused to pay for requested COVID-19 testing, which forced APP to pay more than $40,000 out-of-pocket. Goldberg Supp. Decl. ¶¶ 7–8.

---

[3] *See, e.g., Boscorale Operating, LLC v. Nautica Apparel, Inc.*, No. 603433/99, 2000 WL 35939290 (N.Y. Sup. Ct. Aug. 21, 2000) (other party "agree[d] not to assert any setoffs, counterclaims or reductions whatsoever or to make deductions for bad debts, discounts or any cost incurred in the marketing, sale, distribution or exploitation of the Name and Marks from the royalty, interest or other payments due Licensor hereunder" (citation omitted)); *Mishal v. Fiduciary Holdings, LLC*, 109 A.D.3d 885, 885 (2d Dept. 2013) (other party "waive[d] the right to interpose any defense, setoff, counterclaim or crossclaim of any nature or description" (citation omitted)); *Sterling Nat. Bank v. Biaggi*, 47 A.D.3d 436, 436 (1st Dept. 2008) (other party "absolutely, unconditionally and irrevocably waive[d] any and all rights to assert any defense, set-off, counterclaim or cross claim of any nature whatsoever").

[4] *See, e.g., Boscorale Operating*, 2000 WL 35939290 ("[T]he contractual language in effect provides that Nautica's obligations under the lease, and Boscorale's obligation to pay royalties on the amounts that it was able to earn . . . are independent covenants."); *cf. Universal Commc'ns Network, Inc. v. 229 W. 28th Owner, LLC*, 85 A.D.3d 668, 669 (1st Dept. 2011) ("[T]he obligation to pay rent pursuant to a commercial lease is an independent covenant, and thus, cannot be relieved by allegations of a landlord's breach, absent an express provision to the contrary.").

Although the Court shall not consider some of the statements in Goldberg's declaration because they are conclusory and unsupported by factual data, *see* Goldberg Decl. ¶¶ 6–9; *cf. Mazur v. N.Y. City Dep't of Educ.*, 53 F. Supp. 3d 618, 629 (S.D.N.Y. 2014), *aff'd*, 621 F. App'x 88 (2d Cir. 2015), it finds that the specific allegations APP sets forth are sufficient to create a material issue of fact with respect to Feel Films' performance under the contract. Viewing the record in the light most favorable to APP, APP has shown that Feel Films withheld consent for $40,000 of COVID-19 testing costs. The parties dispute whether such costs were reasonable and whether APP paid these costs out-of-pocket, *see* Hirschkorn Reply Decl. ¶¶ 15, 17, ECF No. 55; Goldberg Supp. Decl. ¶¶ 7–8, which creates questions of fact for a jury to decide. And, if the jury were to determine that such costs were reasonable and Feel Films refused to pay, then Feel Films' failure to perform under the contract resulted in APP paying $40,000 out-of-pocket, and, therefore, earning only $12,801 for its efforts under the Agreement.[5] As other courts have noted, "[c]ourts and commentators have long recognized that materiality is primarily a question of fact, the resolution of which is necessarily a function of context and circumstances." *Bear, Stearns*, 361 F. Supp. 2d at 295–96 (citation omitted) (collecting cases). Thus, it is for the jury to decide whether or not such a breach by Feel Films would excuse APP's performance under the contract. *See id.* at 296–97; *Drapkin v. Mafco Consol. Grp., Inc.*, 818 F. Supp. 2d 678, 693 (S.D.N.Y. 2011).

Accordingly, Feel Films' motion for summary judgment for its breach of contract claim is DENIED.

B. <u>Conversion</u>

Under New York law, "[a] conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering

---

[5] Based on the amount for the producer fee advanced by Feel Films. *See* Pl. Reply 56.1 ¶ 25.

with that person's right of possession." *Tutor Perini Bldg. Corp. v. N.Y. City Reg'l Ctr., LLC*, 525 F. Supp. 3d 482, 514 (S.D.N.Y. 2021) (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49 (N.Y. 2006)). To prove a claim for conversion, a plaintiff must show (1) its "possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito*, 8 N.Y.3d at 50 (citation omitted). And, "[i]t is well-settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Amity Loans, Inc. v. Sterling Nat'l Bank & Tr. Co. of N.Y.*, 177 A.D.2d 277, 279 (1st Dept. 1991) (citation omitted).

Moreover, "it is well established in New York that a breach of contract claim may not be recast as a conversion claim." *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10 Civ. 1762, 2013 WL 696651, at *5 (E.D.N.Y. Feb. 26, 2013). To determine whether a conversion claim is simply a breach of contract claim, courts assess whether "the claims plead the same material facts" and whether "the conversion claim is based on a wrong that is separately actionable." *Id.*; *see also Tutor Perini*, 525 F. Supp. 3d at 515 ("[A] conversion claim is not duplicative of a contract claim where a plaintiff alleges acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." (quotation marks and citation omitted)).

Feel Films argues that it has proven its claim for conversion because the tax credits and their proceeds constitute an identifiable fund in which Feel Films has a possessory interest under the trust provision of the Agreement. *See* Pl. Mem. at 10; Agreement art. 6(c) (providing that APP "agrees that the Tax Credits and Tax Credit Certificates are held in trust for [Feel Films] such that the Tax Credits and Tax Credit Certificates are the property of [Feel Films]"). Feel Films also contends that APP has exercised wrongful dominion over the tax credits by selling the tax credits and retaining the proceeds after repudiating its contractual obligations. Pl. Mem. at 10–14; Pl. Reply at 7–9, ECF No.

53; Def. 56.1 ¶¶ 18–22; ECF No. 46-10.  APP argues that Feel Films' conversion claim is duplicative of its breach of contract claim.  Def. Mem. at 10–16.

Assuming, *arguendo*, that Feel Films' conversion claim is not duplicative of its breach of contract claim, the Court holds that Feel Films is not entitled to summary judgment.  Even if the trust provisions create separate obligations, the breach of which constitute unlawful or wrongful acts distinguishable from a mere violation of contractual rights, these obligations are operational only if Feel Films has performed under the contract.  *See Bear, Stearns*, 361 F. Supp. 2d at 291 ("A fundamental principle of contract law provides that the material breach of a contract by one party discharges the contractual obligations of the non-breaching party.").  It is undisputed that APP's obligations with respect to the tax credits arise from the Agreement, *see* Agreement art. 6, and, as discussed above, APP is relieved of these obligations if Feel Films materially breached its obligations under the Agreement.  *See id*.  Thus, because there are disputes of material fact as to whether Feel Films materially breached the Agreement, it is not entitled to summary judgment on its conversion claim.

Accordingly, Feel Films' motion for summary judgment on its conversion cause of action is DENIED.

## CONCLUSION

For the reasons stated above, Feel Films' motion for summary judgment is DENIED.  The Clerk of Court is directed to terminate the motion pending at ECF No. 44.  Trial in this case is scheduled to begin on **February 21, 2023**.

SO ORDERED.

Dated: September 8, 2022
New York, New York

ANALISA TORRES
United States District Judge